UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALBERT BEARD, | CASE NO. C15-1464JLR |
| Plaintiff, | ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| MIGHTY LIFT, INC., | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Defendant Mighty Lift, Inc.'s ("Mighty Lift") motion for summary judgment. (MSJ (Dkt. # 31).) Plaintiff Albert Beard opposes Mighty Lift's motion. (Resp. (Dkt. # 40).) The court has considered the motion, the parties' submissions filed in support of and opposition to the motion, the balance of the record, and the applicable law. In addition, the court heard the argument of counsel on December 14, 2016. Being fully advised, the court GRANTS Mighty Lift's motion for summary judgment.

ORDER- 1

1

## II.    BACKGROUND

2     This action is a products liability lawsuit involving a pallet jack. (*See generally*

3  Compl. (Dkt. # 1-2).) Mr. Beard has alleged causes of action for negligence (*id.*

4  ¶¶ 3.1-3.2) and strict liability based on defective design and manufacture (*id.* ¶¶ 4.1-4.3).

5  Mighty Lift supplied the pallet jack at issue to Mr. Beard's employer, ABF Freight. (*Id.*

6  ¶ 2.2.)

7     Mr. Beard has worked as a truck driver since 1983. (Beard Decl. (Dkt. # 42) ¶ 2.)

8  He has operated pallet jacks for approximately 30 years. (*Id.* ¶ 2.) On March 6, 2012,

9  Mr. Beard delivered a load of crated interior tile to a private residence that was being

10 renovated in Seattle, Washington. (*See* Compl. ¶ 2.1.) The load of tiles weighed

11 approximately 2,000 pounds. (Resp. at 3.) During the delivery, Mr. Beard backed his

12 truck down a "long, sloped driveway" that led to the residence. (*Id.*; Compl. ¶ 2.2.) The

13 floor of the trailer from which Mr. Beard was unloading material at the time of the

14 accident had a slope of approximately 9 degrees. (Topinka Decl. (Dkt. # 33) Ex. 2

15 ("Topinka Exp. Rep.") at 16.) On the day of the incident, Mr. Beard used a pallet jack

16 that Mighty Lift supplied. (Compl. ¶ 2.2; *see* Beard Decl. ¶ 13.) This was the first time

17 that Mr. Beard had used a Mighty Lift pallet jack. (Beard Decl. ¶ 13.)

18     Once Mr. Beard was inside the trailer with the load of tiles that he intended to

19 unload, he began using a method he called "drag-braking" to move the load to the back of

20 the trailer. (Resp. at 3.) Mr. Beard testified that he only uses the "drag-braking" method

21 if he is unloading a "heavy pallet" on a "steep incline." (Beard Dep. (Dkt. ## 32-2, 41-1)

22 at 98:25-99:3 ("So you only use this if it's a steep incline and a heavy pallet or vice

1 | versa."); *see also id.* at 99:22-100:12 ("Steep incline, necessity, in my book.").)  To
2 | accomplish this method of braking, Mr. Beard testified that the pallet truck operator
3 | partially loads a pallet so that a third to half of the pallet is resting on the pallet jack's
4 | forks, and the "front part of the pallet furthest away from you is dragging on the deck of
5 | the trailer or deck of the asphalt or driveway." (*Id.* at 98:5-99:16.)  In this instance, he
6 | placed himself in front of the load on the downhill side of the slope so that he could use
7 | his approximately 200-pound body as leverage against the 2,000-pound load of tiles.
8 | (Beard Dep. at 209:5-21.)  When he was asked during his deposition if it made "common
9 | sense to use your 200-pound body as leverage against a weight that's 2,000 pounds," Mr.
10 | Beard responded: "If you're confident, yes." (*Id.* at 209:9-12.)

11 | As Mr. Beard was "drag-braking" the load of tiles down the length of the trailer
12 | and onto the liftgate, the load became caught on some diamond plating on the floor of the
13 | trailer.  (*Id.* at 194:8-12.)  The load became ensnared on the diamond plating because the
14 | load was touching the ground due to Mr. Beard's use of the "drag-braking" method.  (*Id.*
15 | at 194:13-16.)  At this point, Mr. Beard decided to push the forks of the pallet jack all the
16 | way into the pallet.  (*Id.* at 194:17-195:7.)  He then made three partial pumps on the
17 | handle of the pallet jack to slowly lift the pallet.  (*Id.* at 195:4-14.)  On the third partial
18 | pump, the bottom slat of the pallet that had been caught under the diamond plating broke
19 | off.  (*Id.* at 195:15-18.)  When the slat broke, the pallet jack raised the load about an inch
20 | above the trailer floor and liftgate.  (*Id.* at 195:19-21.)  The pallet jack then began to
21 | move forward while Mr. Beard was simultaneously attempting to hold it back by pushing
22 | with his body and walking backwards.  (*Id.* at 195:21-24.)  After the pallet jack had rolled

ORDER- 3

1  a foot or two, Mr. Beard squeezed the handle or lever of the pallet jack in an attempt to

2  lower the load and stop the pallet jack's forward, downhill progress. (*Id.* at

3  197:15-198:9.) Unfortunately, the pallet jack continued to gather momentum, and Mr.

4  Beard was unable to stop it. (*Id.* at 198:5-21.) Ultimately, he let go of the pallet jack and

5  jumped off the truck. (*Id.*) The pallet jack followed Mr. Beard off the truck and landed

6  next to him. (Compl. ¶ 2.4.) The load then fell over, pinning Mr. Beard to the ground

7  and injuring him. (*Id.*)

8      Mr. Beard believes that the March 6, 2012, accident happened because the Mighty

9  Lift pallet jack that he used did not perform like other pallet jacks that he had used

10  previously. (Beard Decl. ¶ 16.) Indeed, Mr. Beard asserts that, contrary to his

11  expectations, the Mighty Lift pallet jack drops slower with heavier loads than with lighter

12  loads. (*Id.* ¶¶ 16-17.) Mr. Beard submits expert testimony that (1) the Mighty Lift pallet

13  jack lowers loads up to five times more slowly than pallet jacks made by different

14  manufacturers, and (2) the Mighty Lift pallet jack lowers a light load at a faster speed

15  than a heavy load. (Goodwin Decl. (Dkt. # 43) ¶ 2, Ex. 1 ("Goodwin Ex. Rep.") at 3.)

16  Mr. Beard's expert witness opines that these features of the Mighty Lift pallet jack

17  constitute either a design or manufacturing defect. (*Id.* at 4.) Mr. Beard's expert witness

18  also opines that Mr. Beard "would have been able to stop his load before it fell off the

19  truck if he had been using a pallet jack that lowered its load as quickly as he was

20  expecting." (*Id.* at 3.)

21      Mighty Lift's expert witness disputes that the Mighty Lift pallet jack contains any

22  manufacturing or design defect. (*See generally* Topinka Ex. Rep.) In addition, Mighty

ORDER- 4

1  Lift's expert witness opines that "Mr. Beard would not have been able to exert enough

2  force to hold the material load after he lifted it off of the trailer floor to clear the edge of

3  the diamond-plate." (*Id.* at 16.)  Based on tests of the subject pallet truck, Mighty Lift's

4  expert witness also opines that "Mr. Beard would have been unable to stop and/or lower

5  the load he was transporting prior to stepping off or falling off of the back end of the

6  trailer life gate." (*Id.*)  This testimony, about the Mighty Lift pallet truck specifically at

7  issue, is uncontested.

8       The Mighty Lift pallet jack operated by Mr. Beard contained a decal on the handle

9  with four elements. (*See* Johnson Decl. (Dkt. # 44) ¶ 5, Ex. ("Johnson Ex. Rep.") at 4

10  ("As can be seen in Figure 1 (near the end of this report) there are four elements to this

11  illustration . . . ."), 8 ("Figure 1.  The label on the handle of the Mighty Lift pallet jack

12  shows four elements (from top to bottom) meant to inform users how to use the device.").

13  The first three elements in the decal are instructional in nature and depict the operation of

14  the pallet jack on level ground. (*See id.*)

15       It is uncontested that the fourth element of the decal on the handle of the pallet

16  jack appeared as follows. (*See* Johnson Ex. Rep. at 4 ("There is an icon on the Mighty

17  Lift that was probably meant to convey the information not to use it on an incline."), 8

18  ("The bottom element shows a figure apparently pulling a load down an incline and an X

19  over the element."); Topinka Ex. Rep. at 4, Photograph 1 (showing a picture of the decal

20  on the Mighty Lift pallet truck at issue), at 10, Photograph 7 (same).)

21

22



Ms. Helen Fu, Mighty Lift's Federal Rule of Civil Procedure 30(b)(6) deponent, testified that this symbol was "a warning against don't use the pallet jack on [an] incline," and that a "person should not be in front of the pallet jack when it [is] starting." (Scott Decl. (Dkt. # 41) ¶ 5, Ex. D ("Fu Dep.") at 43:21-23.) Nevertheless, Mr. Beard submits evidence from an expert witness indicating that this symbol is confusing. (Johnson Ex. Rep. at 8.) Mr. Beard's expert witness opines that "[t]he critical confusion in this element is that operators are either being told not to use the pallet jack on any inclined surface (the intended instruction) or, if they do, they should not stand downhill but instead uphill from the pallet jack . . . ." (Id.) Thus, Mr. Beard's expert witness concludes that the symbol "is ambiguous as whether this means don't use a pallet jack on any incline, or, if you do don't stand in front of it." (Id. at 8.)

Despite the foregoing expert opinion that the decal at issue is ambiguous or confusing, Mr. Beard testified that he unequivocally understood the information that the warning symbol was intended to convey:

> Q: What do you think that image is telling you?
> A: Well, obviously, it's telling you not to go on an incline.

1   (Beard Dep. at 179:7-8; *see also id.* at 179:20-25 ("But I know that it's stating that you

2   shouldn't go do an incline. That's what would be the reason why it's on there.").)

3         Further, despite understanding the foregoing warning on the decal, and despite his

4   accident on March 6, 2012, Mr. Beard testified that he would still utilize the pallet jack

5   on an incline and he would still place himself downhill of the pallet jack while operating

6   it on an incline. (*See id.* at 179:20-25.) However, instead of facing away from the pallet

7   jack as the image depicts in the decal on the pallet jack, he would simply turn his body so

8   that he faced the pallet jack while operating it on an incline. (*See id.*) He testified

9   concerning the warning image on the decal as follows:

10        Q: All right. What about the fourth image, the very most bottom one?
          What does that mean to you?

11        A: Well, that means that I wouldn't be doing it the way that he's doing. If
          I was pulling it, I would be turned facing it and backing down the hill and

12        having leverage to put it, depending on how heavy this is.
        Q: What do you think that image is telling you?

13        A: Well, obviously it's telling you not to go on an incline.
        Q: Okay.

14        A: That's my opinion.
        Q: All right. And what about that image tells you that?

15        A: Tells me what?
        Q: Not to go on an incline.

16        A: That's what I would assume. But I would say if you're going to pull it
         down, my first impression would be – because I know what they were

17        trying to get at. But not knowing that, I would say this guy is not doing it
         right by turning his back to the load and pulling it down a hill. I would do

18        the opposite. I would be facing the pallet and letting it come down slow,
        you know, kind of pushing on it and letting it come down real slow.

19           But I know that it's stating that you shouldn't go do an incline.
       That's what would be the reason why it's on there.

20   (*Id.* at 178:1-179:25.)

21   //

22

1

### III.   ANALYSIS

2          In his response to Mighty Lift's motion for summary judgment, Mr. Beard asserts

3   that Mighty Lift is liable for his injuries under Washington's Product Liability Act

4   ("WPLA"), RCW 7.72.030, as a result of a design defect, a manufacturing defect, and

5   inadequate warnings. (*See* Resp. at 16.) Mighty Lift is subject to liability to Mr. Beard

6   under the WPLA if Mr. Beard's "harm was proximately caused" by Mighty Lift's

7   negligence "in that the pallet jack was not reasonably safe as designed or not reasonably

8   safe because adequate warnings or instructions were not provided," *see* RCW

9   7.72.030(1), or if Mr. Beard's "harm was proximately caused" because the pallet jack at

10   issue "was not reasonably safe in construction," *see* RCW 7.72.030(2). Mr. Beard also

11   asserts a claim of negligence against Mighty Lift. (Compl. ¶¶ 3.1-3.2.) "Proximate cause

12   is an essential element of both negligence and product liability theories." *Anderson v.*

13   *Dreis & Krump Mfg. Corp.*, 739 P.2d 1177, 1183 (Wash. Ct. App. 1987). The primary

14   basis for Mighty Lift's motion for summary judgment is a lack of proximate cause. (*See*

15   Mot. at 1 ("Mighty Lift . . . moves for summary judgment . . . of [Mr. Beard's] claims

16   because [Mr. Beard] cannot demonstrate that a defect in the Mighty Lift pallet truck . . .

17   caused his injuries. Instead, the incident was caused by his unfortunate choices . . . .");

18   *see generally* Reply (Dkt. # 48).)

19          **A.   Standards**

20          Summary judgment is appropriate if the evidence shows "that there is no genuine

21   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

22   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

1  *Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the

2  outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

3  factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact

4  finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

5  992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49). Under Washington law,

6  proximate cause is ordinarily a jury question, but the court may determine proximate

7  cause on summary judgment if reasonable minds could reach only one conclusion. *Ruff*

8  *v. Cty. of King*, 887 P.2d 886, 889 (Wash. 1995).

9      **B. Proximate Cause**

10     Mighty Lift contends that Mr. Beard failed to raise a genuine dispute as to any

11  material fact concerning the necessary element of proximate cause in each of Mr. Beard's

12  claims. To meet the requirements of proximate causation, Mr. Beard must put forth

13  evidence of both cause in fact and legal causation. *Baughn v. Honda Motor Co., Ltd.*,

14  727 P.2d 655, 664 (Wash. 1986); *Channels v. Mills*, 890 P.2d 535,538 (Wash. Ct. App.

15  1995) ("Generally, 'proximate' cause subdivides into cause in fact and legal cause.")

16  (citing *Christen v. Lee*, 780 P.2d 1307, 1321 (Wash. 1989)). Cause in fact concerns the

17  "but for" consequences of an act or the physical connection between the act and the

18  injury. *Baughn*, 727 P.2d at 664. Cause in fact is generally a question of fact reserved

19  for the jury, but the court may determine it as a matter of law if "the facts are undisputed

20  and the inferences therefrom are plain and incapable of reasonable doubt or difference of

21  opinion." *Id.*

22

1   Legal causation, on the other hand, "rests on policy considerations as to how far

2   the consequences of a defendant's acts should extend." *Baughn*, 727 P.2d at 666. It

3   involves the "determination of whether liability *should* attach as a matter of law given the

4   existence of cause in fact." *Hartley v. State*, 698 P.2d 77, 83 (Wash. 1985). "Unlike

5   factual causation, legal causation 'hinges on principles of responsibility, not physics.'"

6   *Anderson*, 739 P.2d at 1184 (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760

7   F.2d 481, 492 (3rd Cir. 1985)). "Consequently, the existence of legal causation between

8   two events is determined on the facts of each case upon mixed considerations of logic,

9   common sense, justice, policy and precedent." *Id.* (internal quotation marks and citations

10  omitted).

11       Mr. Beard submits expert testimony that, if credited,[1] would be sufficient to

12  withstand summary judgment with respect to cause in fact concerning all of his theories

13  of liability. Specifically, Mr. Beard provides expert testimony of a design or

14  manufacturing defect related to the speed with which the Mighty Lift pallet jack drops its

15  load to the ground. (Goodwin Ex. Rep. at 4.) Mr. Beard's expert opines that if the

16  Mighty Jack pallet dropped more quickly, Mr. Beard would have been able to stop the

17  pallet jack in time to avoid the accident. (*Id.* at 3 ("Mr. Beard would have been able to

18  stop his load before it fell off the truck if he had been using a pallet jack that lowered its

19  load as quickly as he was expecting.").) Another of Mr. Beard's experts opines that if

20

21       [1] Mighty Lift asserts in one sentence of its reply memorandum that Mr. Beard's expert witness reports are insufficient to defeat summary judgment because they are "[c]onclusory, vague, or speculative." (Reply at 4 & n.10.) Even if properly raised, the court need not determine this issue, because the court resolves Mighty Lift's motion on other grounds.

22

1  Mighty Lift "had informed users that it takes longer to stop the pallet jack when there is a

2  heavy load rather than a light load, then, on a more probable than not basis, [Mr. Beard]

3  could have adjusted his action and reduced the probability of this incident occurring."

4  (Johnson Ex. Rep. at 7.)  Of course, Mighty Lift disputes all of the foregoing evidence

5  (*see* Reply at 4-5 (citing Topinka Ex. Rep.)), but at best, the evidence that Mighty Lift

6  submits simply creates a genuine dispute of material fact; it is not sufficient to obtain

7  summary judgment in Mighty Lift's favor with respect to cause in fact.

8          However, as noted above, in order to establish proximate causation, Mr. Beard

9  must also put forth evidence not only of factual causation, but of legal causation as well.

10  *See Baughn*, 727 P.2d at 664.  The court concludes that Mr. Beard falls short with respect

11  to this prong of proximate cause.  The doctrine of superseding cause limits the situations

12  in which the court may hold legal causation to exist between two events.  *Anderson*, 739

13  P.2d at 1184.  "[O]nly intervening acts which are *not* reasonably foreseeable are deemed

14  superseding causes."  *Id.* (citing *Campbell v. ITE Imperial Corp.*, 733 P.2d 969, 973

15  (Wash. 1987) and cases cited therein).  The test for foreseeability, however, is not the

16  unusualness of the intervening act that results in the injury to the plaintiff; rather, the test

17  is whether the result of the act is within the ambit of hazards covered by the duty imposed

18  upon the defendant.  *Id.*  In essence, Mighty Lift argues that Mr. Beard's refusal to heed

19  its warning not to operate the pallet jack on an incline despite Mr. Beard's testimony that

20  //

21  //

22  //

ORDER- 11

1  he understood the warning is a superseding cause that breaks the chain of legal

2  causation.[2] (*See* Reply at 2-4, 5-6.)

3       *Baughn* is a case in which the chain of legal causation was disrupted due to the

4  plaintiffs' failure to heed warnings from the manufacturer and others concerning use of

5  the product at issue. In *Baughn*, some children were injured while riding a mini-trail bike

6  on a public roadway after they drove through three stop signs without stopping and

7  collided with a truck. 727 P.2d at 658. The guardians and parents of these children sued

8  the manufacturer of the bike under theories of strict product liability. *Id.* at 658-59. The

9  trial court granted summary judgment to the manufacturer. *Id.* at 659. In upholding the

10 trial court's ruling, the Washington Supreme Court stated that "[t]he accident in this case

11 occurred because the boys who were injured ignored [the manufacturer's] and their

12 parents' warnings not to ride the mini-trail bike on streets and roadways, and because

13 they ignored stop signs on the roadway . . . ." *Id.* In ruling that the manufacturer should

14 not be held strictly liable for manufacturing an unreasonably unsafe or dangerous

15 product, the Court relied upon Comment j of the Restatement (Second) of Torts § 402A,

16 which states:

17  _____

18      [2] Mr. Beard's expert witness opines that the warning decal on the handle of the Mighty
     Lift pallet jack is confusing or ambiguous. (Johnson Ex. Rep. at 5, 8.) This evidence, however,
19   does not create a genuine dispute of material fact because it is undisputed that Mr. Beard himself
     was not confused and understood what the warning the decal was intended to convey. (Beard
20   Dep. at 179:7-25.) Mr. Beard's expert witness also opines that the warning decal on the handle
     of the Mighty Lift pallet jack was ambiguous because the label could have been warning (1) not
21   to use the pallet jack on an incline or (2) that the pallet jack operator should never be downhill of
     a load on an incline. (Johnson Ex. Rep. at 8.) Even if credited, this opinion also does not create
22   a dispute of material fact because, in either event, Mr. Beard would not have been injured if he
     had complied with his own understanding of the label's warning.

1

> Where warning is given, the seller may reasonably assume that it will be
> read and heeded; and a product bearing such a warning, which is safe for
> use if it is followed, is not in defective condition, nor is it unreasonably
> dangerous.

2

3

*Id.* at 661 (quoting Restatement (Second) of Torts § 402A, comment j (1965) and citing

4

*Novak v. Piggly Wiggly Puget Sound Co., Inc.*, 591 P.2d 791, 795-96 (Wash. Ct. App.

5

1979)). Indeed, the Washington Supreme Court stated that its "application of this

6

comment, effectively denies the parties' other strict liability claims" as well. *Id.*

7

The court finds the Washington Supreme Court's analysis in *Baughn* instructive

8

here. If, under Washington law, a seller "may reasonably assume" that the user of its

9

product will "read and heed[]" the warnings the seller has placed on the product, *see id.*,

10

this court cannot conclude that Mr. Beard's refusal to heed a warning decal on the handle

11

of Mighty Lift's pallet jack, which Mr. Beard testified he understood correctly, was

12

reasonably foreseeable by Mighty Lift.[3] Because Mr. Beard's act in defying Mighty

13

14

15  [3] During oral argument, counsel for Mr. Beard represented to the court that there was
evidence in the record that Mr. Beard never saw the warning decal on the handle of the Mighty
16  Lift pallet jack. Mr. Beard's counsel, however, was unable to locate this evidence in the record
during oral argument. The court granted Mr. Beard's counsel the opportunity to file a statement
17  directing the court to this evidence in the record by the end of that day. The day after oral
argument, Mr. Beard's counsel filed a statement directing the court to a portion of testimony in
Mr. Beard's deposition. (Supp. Resp. (Dkt. # 51).) The pertinent portion of the testimony is as
18  follows:

> Q: . . . Do you recognize Exhibit 3 [which is the decal in question]?
19  > A: Only because I went to my employment and saw it, what, a couple of weeks
> ago.

20  (Beard Dep. at 166:17-19.) Even considering this testimony in the light most favorable to Mr.
Beard, it does not establish that Mr. Beard did not see or read the warning decal on day of the
21  accident. Mr. Beard's testimony merely establishes that on the day of his deposition, which was
more than four years after the accident, he only recognized the decal because he had visited his
22  place of employment a couple of weeks earlier. The court also notes that Mr. Beard could have,
but did not, submit a declaration on this issue in response to Mighty Lift's motion.

1  Lift's warning decal was not reasonably foreseeable, his act represents a superseding

2  cause that breaks the chain of proximate causation to Mighty Lift.[4]  Accordingly, the

3  court concludes that Mr. Beard cannot establish proximate cause as a matter of law with

4

5    In any event, the law in Washington is that "[w]here warning is given, the seller may
reasonably assume that it will be read and heeded." *Baughn*, 727 P.2d at 661. The warning
6  decal at issue was prominently located on the handle of the Mighty Lift pallet jack. (*See* Johnson
Ex. Rep. at 8 ("The label on the handle of the Mighty Lift pallet jack . . . shows a figure
apparently pulling a load down an incline and an X over the element."); Topinka Ex. Rep. at 4,
7  Photograph 1 (showing a picture of the decal on the Mighty Lift pallet truck at issue), at 10,
Photograph 7 (same).) Accordingly, Mighty Jack "may reasonably assume" that Mr. Beard read
8  its warning decal. *See Baughn*, 727 P.2d at 661. Further, despite when Mr. Beard first saw the
warning decal, he testified that, although he understood the warning, he would still operate the
9  pallet lift on an incline. (*See* Beard Dep. at 179:3-4 ("If I was pulling it, I would be turned facing
it and backing down the hill and having leverage to put it, depending on how heavy this is."),
10  179:20-22 ("I would be facing the pallet and letting it come down slow, you know, kind of
pushing on it and letting it come down real slow. But I know it's stating that you shouldn't go
11  do an incline.")). Because Mr. Beard testifies that he would not "heed" Mighty Lift's warning,
*see Baughn*, 727 P.2d at 661, the court concludes that Mr. Beard still fails to raise a genuine
12  dispute of material fact concerning Mighty Lift's warning decal irrespective of when he first saw
it.

13    [4] Courts from other jurisdictions have reached similar conclusions, and this court finds
their reasoning persuasive. *See Red v. Gen. Mills, Inc.*, No. 215CV02232ODWJPR, 2015 WL
14  9484398, at *5 n.2 (C.D. Cal. Dec. 29, 2015) ("[N]umerous courts have declined to recognize
claims stemming from a plaintiff's failure to read and heed product labels." (citing *Goehring v.
15  Target*, 91 F. App'x 1, 5 (9th Cir. 2004) (affirming summary judgment where "warnings [were]
adequate and, had they been read and heeded, would have prevented the injury"); *Alfano v. BRP
16  Inc.*, No. 2:08CV1704JAMDAD, 2010 WL 2292265, at *2 (E.D. Cal. June 4, 2010)
("[U]ndisputed evidence that a plaintiff failed to read instructions or warnings which were
17  provided with the product is sufficient to entitle the defendant to judgment as a matter of law.");
*Salyards ex rel. Salyards v. Metso Minerals Tamper OY*, No. 1:04 CV 05798 OWW LJ, 2005
18  WL 3021959, at *9 (E.D. Cal. Nov. 10, 2005) ("[W]here there is no intermediary at all, the end
user is held responsible for his or her failure to read warning labels.")); *Ehlers v. Siemens Med.
19  Sols., USA, Inc.*, 251 F.R.D. 378, 390 (D. Minn. 2008) (holding that the failure of the hospital
staff to follow the training and instructions the staff received from the defendant was a
20  superseding cause that broke any causal connection between the defendant's alleged design
defect and the plaintiff's injury) (citing *Roberts v. Donaldson*, 149 N.W.2d 401, 408 (Minn.
21  1967) (holding that a truck driver's negligence in failing to observe highway instructions and
signs regarding the route to be driven was a superseding cause relieving the tractor owner of
liability)); *Hood v. Ryobi Am. Corp.*, 181 F.3d 608, 612 (4th Cir. 1999) (applying Maryland law
22  and holding that the manufacturer need not anticipate that a user will ignore clear warnings).

1 || respect to his claims for product or strict liability or negligence.  Accordingly, the court

2 || also concludes that Mighty Lift is entitled to summary judgment on all of Mr. Beard's

3 || claims.

### IV.    CONCLUSION

5     Based on the foregoing analysis and authorities, the court GRANTS Mighty Lift's

6 || motion for summary judgment (Dkt. # 31).[5]

7     Dated this 19th day of December, 2016.

JAMES L. ROBART
United States District Judge

---

[5] There are two other pending motions on the court's docket.  Mighty Lift's motion to compel discovery (Dkt. # 24) is now moot, and accordingly, the court DENIES it.  In addition, Mr. Beard has moved to limit the testimony of one of Mighty Lift's expert witnesses (Dkt. # 34). In ruling on Mighty Lift's motion for summary judgment, the court did not rely upon the challenged portion of Mighty Lift's expert witness's testimony.  Accordingly, Mr. Beard's motion is also moot, and the court DENIES it.